## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MARK TORZY, an individual
SHANNON TORZY, an individual

       Plaintiffs,

v

ALEXIS GRONDA, an individual,

       Defendant.
_____/

WARNER NORCROSS + JUDD LLP
John A. MacKenzie (P80386)
Attorneys for Plaintiffs
12900 Hall Road, Suite 200
Sterling Heights, MI 48313
(586) 303-4100
jmackenzie@wnj.com
_____/

## **COMPLAINT**

      Plaintiffs, Mark and Shannon Torzy, through their counsel, Warner Norcross + Judd, LLP, and for their Complaint, state as follows:

## **THE PARTIES, JURISDICTION, AND VENUE**

      1.    Plaintiffs, Mark and Shannon Torzy ("Plaintiffs" or "Torzys"), are husband and wife who own the real property that is commonly known as 8800 S Channel Drive, Harsens Island, MI 48028 ("Torzy Property").

      2.    Defendant, Alexis Gronda ("Defendant"), is an individual employed by the Michigan Department of Environment, Great Lakes, and Energy Water

Resources Division ("EGLE"), located at 27700 Donald Ct., Warren, Michigan 48092.

3.     This action arises under 42 U.S. § 1983.  Jurisdiction is conferred by 28 U.S. § 1331, § 1343(a)(3)(4).

4.     This Court has jurisdiction over the Defendant because the claim asserted challenges Defendant's actions as a state official, in her personal capacity. *See, Abick v State of Michigan*, 803 F.2d 874, 877 (Sixth Cir. 1986); *Pennhurst State School & hosp. v Halderman*, 465 U.S. 89, 102 (1984).

5.     Venue is proper in this Court per 28 U.S. § 1391(b).

## GENERAL ALLEGATIONS

6.     Plaintiffs incorporate all previous paragraphs as though fully set forth herein.

7.     Plaintiffs, Mark and Shannon Torzy ("Plaintiffs" or "Torzy"), own the real property commonly known as: 8800 S Channel Drive, Harsens Island, MI 48001 ("Torzy Property").

8.     Plaintiff Torzys purchased the Torzy Property to enjoy the pleasures of Lake St. Clair with their family and friends.

9.     The Torzys purchased the Torzy Property because it has direct water access to the South Channel, which connects Lake St. Clair and Lake Huron, and also a canal system to swim, fish, moor boats and other watercrafts.

2

10.    Richard Hobig ("Hobig") is an individual who owns the real property commonly known as: 8760 South Channel Drive, Harsens Island, MI 48028 ("Hobig Property").

11.    The Hobig Property is located adjacent to the Torzy Property.

12.    Also, Plaintiff Torzys and Hobig each own a 1/2 tenant-in-common interest in the real property legally described as follows:

An undivided one half interest in part of Lot 31, South Channel Section of the St. Clair Flats survey, described as Lot 74, Star Island Subdivision (unrecorded) as commencing at a point on the Northwesterly line of Lot 31, distant North 50 degrees 29 minutes East 423.74 feet from the Northwest corner of Lot 31, thence North 50 degrees 29 minutes East 60.00 feet, thence South 39 degrees 31 minutes East 140.00 feet, thence South 50 degrees 29 minutes West 60.00 feet, thence North 39 degrees 31 minutes West 140.00 feet to the point of beginning.

An undivided one half interest in part of Lot 31, South Channel Section of the St. Clair Flats survey described as Lot 58, Star Island Subdivision, as commencing at the Northwest corner of Lot 31, thence North 50 degrees 29 minutes West 423.74 feet along the Northwesterly line of Lot 31, thence South 39 degrees 31 minutes East 180.00 feet to the point of beginning; thence South 39 degrees 31 minutes East 140 feet, thence North 50 degrees 29 minutes East 60.00 feet, thence North 39 degrees 31 minutes West 140.00 feet, thence South 50 degrees 29 minutes West 60.00 feet to the point of beginning.

13.    Also, Plaintiff Torzys and Hobig each own a 1/3 tenant-in-common interest in the real property legally described as follows:

An undivided one third interest in that part of the made lands and lake bottom lying in the rear of Lot 74, Star Island Subdivision (unrecorded) commencing at a point on the Northwesterly line of Lot 31, South Channel Section of the St. Clair Flats survey, distant South 50 degrees 29 minutes West 96.49 feet from the intersection of the Northwest line of Lot 31 and the Southerly line of the Star Island Highway, thence South 50 degrees 29 minutes West 57.64 feet along the Northwest line of said Lot 31, thence North 39 degrees 31 minutes West 121.40 feet,

3

thence North 50 degrees 35 minutes East 58.36 feet along Michigan State Highway M-154, thence South 39 degrees 31 minutes 30 seconds East 112.17 feet along the Southwest line of Lot 32 to the point of beginning.

14.    The aforementioned properties where Torzy and Hobig have a tenant in common interest are referred to collectively hereinafter as "Lot 74."

15.    The Torzy Property and Hobig Property are both located on real property abutting the South Channel to the south, which is navigable waterway that connects Lake St. Clair to Lake Huron (referred to as "South Channel").

16.    To the north of the Torzy Property and Hobig Property, and in-between the Torzy Property, Hobig Property and Lot 74, is the Seminole Canal (also referred to as a "Dredge Cut" on certain plats).

17.    The Seminole Canal is a manmade dredged canal that was created many years ago for the use of the lot owners – the Plaintiff.

18.    The Seminole Canal intersects with Star Island Highway canal, another manmade canal, which then connects to the South Channel.

19.    The Seminole Canal and Star Island Highway canal are the same, manmade and dredged canal system (which may be referred to collectively as the "Canal System"), which was created to provide ingress and egress access to the South Channel for the benefit of the lot owners, including the Plaintiff.

20.    A photograph of the relevant properties and canal system before the Bridge was installed is below:



21.     The purpose of the Canal System is to provide the lot owners, including Torzy, the ability to ingress and egress the South Channel with boats and other watercrafts.

22.     The St. Clair Flats Survey on record with Clay Township confirms the Torzys' easement in the Seminole Canal and Star Island Highway canal, stating as follows: *"Lots lying along channels extend to said channels."* (**Exhibit A:** St. Clair Flats Survey).

23.     This dedication language in the plat is an easement for the lot owners, the Plaintiffs, for use of the Canal System, which may not be impeded.

24.     This created an easement interest to benefit Torzy and the other lot owners to use the Canal System to ingress and egress the South Channel from their properties.

25.     Also, the Torzys and their predecessors in interest have used the Canal System to ingress and egress the South Channel for decades, which at the very least, creates an easement by prescription.

26.     Under Michigan law, the right of those owning land bordering upon or through which artificial channels pass to the use of the water flowing therein is not a natural right, nor a corporeal right, but an incorporeal right, which can be acquired only by grant, express or implied, or by prescription. *Thompson v Enz*, 379 Mich 667, 679; 154 NW2d 473 (1967).

27.     Non riparian lot owners who hold an easement for lake access have the limited right to use the surface water in a reasonable manner for boating, fishing, and swimming. *Little v Kin*, 249 Mich App 502, 508; 644 NW2d 375 (2002).

28.     Subject to a written easement, a waterfront easement should honor the reasonable expectations of the lot purchasers and protect enjoyment of the lakefront. *Id*. at 515-516

29. The South Channel, and artificial waterways that attach to the South Channel under an EGLE permit, are governed by Section 325 of the Natural Resources Environmental Protection Act ("NREPA"), MCL 324.32501 *et seq*.

30. MCL 324.32502 states as follows:

The lands covered and affected by this part are all of the unpatented lake bottomlands and unpatented made lands in the Great Lakes, including the bays and harbors of the Great Lakes, belonging to the state or held in trust by it, including those lands that have been artificially filled in. The waters covered and affected by this part are all of the waters of the Great Lakes within the boundaries of the state. This part shall be construed so as to preserve and protect the interests of the general public in the lands and waters described in this section, to provide for the sale, lease, exchange, or other disposition of unpatented lands and the private or public use of waters over patented and unpatented lands, and to permit the filling in of patented submerged lands whenever it is determined by the department that the private or public use of those lands and waters will not substantially affect the public use of those lands and waters for hunting, fishing, swimming, pleasure boating, or navigation or that the public trust in the state will not be impaired by those agreements for use, sales, lease, or other disposition. The word "land" or "lands" as used in this part refers to the aforesaid described unpatented lake bottomlands and unpatented made lands and patented lands in the Great Lakes and the bays and harbors of the Great Lakes lying below and lakeward of the natural ordinary high-water mark, but this part does not affect property rights secured by virtue of a swamp land grant or rights acquired by accretions occurring through natural means or reliction. For purposes of this part, the ordinary high-water mark shall be at the following elevations above sea level, international Great Lakes datum of 1955: Lake Superior, 601.5 feet; Lakes Michigan and Huron, 579.8 feet; Lake St. Clair, 574.7 feet; and Lake Erie, 571.6 feet.

31. MCL 324.32515 states as follows:

If the department finds that the project will not injure the public trust or interest including fish and game habitat, that the project conforms to

the requirements of law for sanitation, and that no material injury to the rights of any riparian owners on any body of water affected will result, the department shall issue a permit authorizing enlargement of the waterway affected. The permit shall provide that the artificial waterway shall be a public waterway, except intake or discharge canals or channels on property owned, controlled, and used by a public utility. The existing and future owners of land fronting on the artificial waterway are liable for maintenance of the waterway in accordance with the conditions of the permit.

32.    Part 325 of NREPA was enacted in 1994.

33.    Even though the Canal System was created before 1994, Defendant Gronda has taken the position that EGLE has jurisdiction over the subject canals under NREPA.

34.    The Torzys purchased the Torzy Property on January 13, 2017.

35.    When the Torzys purchased the Torzy Property, the Property had unimpeded water access to the South Channel, as depicted in the photograph above.

36.    This allowed the Torzys to access the Torzy Property by any size or style of boat from the South Channel; and it allowed the public to access the Torzy Property by boat from the South Channel.

37.    The Torzys purchased the Torzy Property because it had unimpeded access to the South Channel, which allowed the Torzys, and their family and friends to access the Torzy Property by water from the South Channel.

38.     The Torzys' son, Shane, works for Monterey boats and stores demo boats at the Property, which includes cruiser style boats.  Shane is no longer able to navigate boats to the Property as a result of the subject Bridge.

39.     The South Channel is the only navigable waterway that connects to the Canal System and provides water access to the Torzy Property.

40.     Without any authority and without a valid permit from the State of Michigan ("State"), Hobig erected a bridge (the "Bridge") across the Canal System, which has foreclosed water access to the Torzy Property from the South Channel.

41.     The Bridge foreclosed navigability of the Canal System to the public and it impedes fishing, swimming, and pleasure boating. This violates MCL 324.32515, also known as the Public Trust Doctrine.

42.     The Bridge connects from the Hobig Property to a separate vacant parcel ("Hobig Vacant Parcel") that Hobig owns in fee simple on the opposite (north) side of the Seminole Canal.

43.     The Bridge expands over the Seminole Canal part of the Canal System.

44.     Below is a photograph of the Torzys using and enjoying the canal system of the Torzy Property before the Bridge:



45.     Photographs of the subject Canal System <u>after</u> the Bridge was installed

are below:





46.     In the late Spring of 2023, Hobig began constructing the Bridge across the Seminole Canal.

47.     Because Hobig did not have a valid permit, Torzy submitted a complaint to EGLE.

48.     On June 27, 2023, Defendant Gronda, on behalf of EGLE, issued a Violation Notice to Hobig for erecting the Bridge without a permit.

49.     Defendant Gronda is an enforcement officer employed by EGLE and the person who governs the territory where the subject properties exist.

50.     In the Violation Notice, Gronda demanded that all Bridge construction cease until Hobig applied for and obtained a proper permit.  (**Exhibit B**: EGLE Violation Notice).

51.     Hobig applied for an after-the-fact permit ("ATF Permit") to approve the Bridge.

52.     On February 21, 2024, EGLE distributed a Public Notice for consideration of Hobig's ATF Permit application.

53.    Plaintiff Torzys objected to the ATF Permit because, among other reasons, the Bridge obstructed Torzys' use of the Canal System and impeded access to the South Channel, and the Bridge damaged the Torzy Property value.

54.    The Bridge is a nuisance and damaged the Torzys, *inter alia*, as follows:

    a.    Neither the Torzys or their family or guests are able to navigate the Canal System to ingress and egress the South Channel.  The ability to access the Torzy Property by watercraft from the South Channel has been foreclosed. The Torzys entire purpose for purchasing the Torzy Property on Harsens Island was to enjoy the pleasures of Lake St. Clair and the waterfront.  The Bridge has destroyed this.

    b.    According to Plaintiffs' real estate expert, the Bridge has diminished the Torzy Property value by $229,000 because the Torzy Property is no longer accessible by boat from the South Channel.

    c.    If the Torzys were aware that water access to the Torzy Property was going to be foreclosed by the Bridge, the Torzys never would have purchased the Torzy Property.

    d.    The Bridge, as constructed, is reckless and unsafe, which further impedes use of the Canal System and is an environmental hazard.

55.    Torzys' objections were sent directly to Defendant Gronda.

56.    The Torzys engaged in repeated discussions with Defendant Gronda and pleaded with her not to authorize the Bridge as it would damage the Torzys' property interest.

57.    In the history of these properties, decades, no one has installed a Bridge

that foreclosed access to the South Channel from the Torzy Property.

58.    The Bridge is not necessary to access any of the subject properties by vehicle or the road.

59.    In the history of these properties, all owners of the relevant parcels access their parcels by vehicle from South Channel Drive, and park on Lot 79.

60.    Hobig has a pedestrian easement that burdens the Torzy Property to walk across a footbridge to the Hobig Property.

61.     All of the lot owners on these relevant parcels utilize the footbridges and easement to access their parcels.

62.    The only reason that Hobig installed the Bridge is because he wants to drive his vehicles onto the Hobig Property instead of using the pedestrian easement that Hobig and all predecessors in interest have used for decades.

63.    Hobig's desire to drive a vehicle over the Bridge should not supersede the Torzys' interest in the Torzy Property or the Canal System, or the public right of navigation.

64.    The Torzys made Defendant Gronda aware of all of the above in their objection to the ATF Permit application for the Bridge.

65.    Notwithstanding the Torzys' objections, on April 15, 2024, Gronda executed a Permit, the ATF Permit, authorizing Hobig's Bridge to remain.

66.    The ATF Permit requires that the Bridge be constructed in accordance

with the submitted plans, drawings, and the specifications stated in the ATF Permits itself.  (**Exhibit C**: ATF Permit).

67.     The Bridge as constructed does not even comply with the ATF Permit, *inter alia*, as follows:

   a.    There is no steel sheet piling seawall or riprap with geotextile fabric was installed as shoreline improvement, or as bridge abutment.

   b.    There is no fill added as called for behind seawall, only crushed stone was added for approach drive and ramp access to bridge.

   c.    The support columns are out of plumb.

   d.    The westernmost panels are out of spec from the permit and unsupported.

   e.    The bridge abutments were to incorporate new sheet piling to provide both support for the bridge loads as well as for embankment stabilization.   Neither the bridge support or embankment stabilization has been adequately achieved.

   f.    The rip rap and geotextile fabric, which provided support for the sheet piling and prevents erosion, is missing.

68.     Hobig's failure to comply with the ATF Permit has caused erosion of the embankment at the north corner of the west abutment; there is eccentric loading on the piles due to the beams not being centered on the piles; the kinks in the beams where only the bottom flange is continuous and that don't occur directly over the pile is of great safety concern; and there is very little shear transfer to the

14

pile because the beam web, which typically carries this load, has been torched through most of its length.

69.     To construct the Bridge, Hobig pieced together cut and welded steel pilings instead of solid single piece pilings.  Plaintiffs' expert has opined that the weld joints are not rated to hold heavy loads such as the Bridge and heavy duty trucks and machinery that Hobig operates on the Bridge.

70.     This is a significant safety concern to Plaintiffs and the general public as people swim in the canal and navigate watercrafts in the canal.

71.     If/when the Bridge fails because of the cut and welded make-shift support pilings, someone could be seriously injured, in addition to a significant disruption to the environment and habitat.

72.     Defendant Gronda, for some reason, ignored all of these aforementioned issues and requirements, and issued the ATF Permit to Hobig.

73.     Defendant Gronda's act and approval of the ATF Permit for the Bridge is damaging to the Torzys, and violates 42 USC 1983.

74.     42 USC 1983 states as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State subjects any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

75.     The Due Process Clause states that "no State shall deprive any person

of life, liberty, or property, without due process of law."

76.     Defendant Gronda, by approving the ATF Permit, has violated 42 USC 1983 and damaged the Plaintiffs.

77.     Upon information and belief, Gronda approved the ATF Permit out of frustration with the Toryzs' complaints about the unpermitted Bridge construction.

78.     Upon information and belief, Gronda has some type of social relationship with Hobig or Hobig's daughter that influenced her decision to approve the ATF Permit.

79.     Gronda's approval of the ATF Permit and Bridge is wholly inconsistent with other actions and decisions Gronda has made in regard to structures in this Canal System.

80.     Nicholas Burnett ("Burnett") is a neighboring property owner to the Torzys and Hobigs.

81.     Burnett owns a parcel of real estate known as "Star Island," which is located on the Star Island Highway canal in the Canal System.

82.     Burnett submitted an application to EGLE to erect a boathouse on Star Island Highway canal, the same Canal System as Plaintiffs' canal.

83.     Burnett's proposed boathouse does not extend across the Canal System nor does it foreclose navigation of the Canal System like the Bridge does.

84.     On August 8, 2024, less than four months after Defendant Gronda

issued the ATF Permit and approved the Bridge, Gronda authored a letter denying Burnett's application for the boathouse in the subject Canal System ("Burnett Denial").

85.     In the Burnett Denial letter, Gronda states her reasons as follows:

> The 4,295 square foot boathouse structure is proposed to extend 24-feet waterward of the proposed replacement seawall structure within the Star Island Highway. This navigational channel is approximately 70-foot-wide, with the ***designated highway easement*** identified at 40-foot-wide. The proposed boathouse structure is requesting to occupy 34% of the navigational fairway. ***It is EGLE's determination that the development of the proposed boathouse will result in a more than minimal disruption to the state-owned, public trust bottomlands and protected public trust uses as described within Rule1(m) of Part 325, as well as riparian rights as described within Rule 1(o) of Part 325***.

(**Exhibit D**: Burnett Denial).

86.     It is perplexing, inconsistent, and shocks the conscience that Gronda would deny Burnett's application for a boathouse on the premise that the boathouse protruding 24' into a 70' wide canal impedes navigation of the Canal System; however, in regard to Hobig's Bridge that extends across the entirety of this Canal System and forecloses ingress and egress of the canal, Gronda approved it.

87.     Defendant Gronda's act and approval of the ATF Permit for the Bridge is damaging to the Torzys, as alleged above; and Gronda's decision to approve the ATF Permit was egregious, arbitrary, capricious, and inconsistent with Federal law, Michigan law, and EGLE's own policy, which meets the *"shock the conscience"* federal standard under 42 USC 1983.

88.     Gronda's approval of the Bridge has deprived Torzys of the use and enjoyment of the Torzy Property, which violates the Torzys' constitutional Due Process rights, as follows:

      a.    Torzys are no longer able to use and enjoy the Torzy Property for the purpose of which it was purchased – to use, access, and enjoy the Canal System and boating access to the South Channel.

      b.    Neither the Torzys, or their family or guests, are able to access the Torzy Property from the South Channel with cruiser style boats, center consoles, or sail boats.

      c.    Under Torzys' deed to the Torzy Property, Torzys own part of the bottom lands of the Seminole Canal.  The Bridge impedes Torzys' use, access, and enjoyment of the portion of the Seminole Canal that they own.  (**Exhibit E**: Torzy Deed)

      d.    Torzys have an easement right in the Canal System, which has been foreclosed by the Bridge.

      e.    The loss of access to the South Channel has significantly diminished the value of the Torzy Property.

89.     Gronda's approval of the ATF Permit and Bridge does not even comply with EGLE's own policy and procedures.

90.     EGLE's policy on clear span bridges, such as the Bridge here, prohibits a structure that will impede passage of a watercraft that would be expected to navigate the Canal System.

91.     The South Channel and its canals are major waterways connecting Lake St. Clair to Lake Huron, which are navigated by freighters, sailboats, large cruisers,

and other watercrafts.

92.    Gronda is well aware that all types of boats traverse the South Channel and subject Canal System. This is why Gronda denied Burnett's boathouse application.

93.    On the other hand, if Gronda's decision to permit the Bridge foreclosing navigation of a canal is lawful, this would open the flood gates for disputes among owners of water property.

94.    On the Great Lakes, there are thousands of properties that use canal systems, like the Canal System in this case, to navigate boats from homes to the Great Lakes.

95.    If Gronda's decision to permit the Bridge stands, then it sets precedent that a waterfront landowner may erect structures that obstruct and foreclose navigation of the canal system to other property owners in the same canal system.

96.    This cannot be the standard.

97.    People around the State of Michigan purchase waterfront properties, just like the Torzys, and pay a premium value for those properties.

98.    It is fundamentally unfair to allow a landowner to foreclose navigation of a canal system to the detriment of other owners of the canal system, such as what occurred here with the Bridge.

99.    NREPA itself under MCL 324.32502, prohibits structures in

waterways that substantially affect the use of those lands and waters for hunting, fishing, swimming, pleasure boating, or navigation. This is the statute from which EGLE/Gronda claim to have jurisdiction, and Gronda violated the standard by approving a Bridge that impedes navigation.

100. The Bridge is causing irreparable harm and injury to the Torzys because it has impaired and impeded their use, enjoyment, and access to the Torzy Property including, but not limited to, impairing ingress and egress rights by boat to the South Channel, and damaging the Torzy Property value.

101. Injunctive relief is warranted to enjoin the ATF Permits and existence of the Bridge.

## COUNT I
## VIOLATION OF 42 U.S.C. 1983 and 1988

102. Plaintiffs incorporate all previous allegations as if fully restated herein.

103. Plaintiffs possess federally-protected property rights, including all rights relating to ownership and possession of the Torzy Property, and ownership interest and easement rights in the Canal System.

104. Defendant Gronda, through her actions, has intentionally and unlawfully interfered with, and deprived Plaintiff of such rights under color of state law, which is actionable under to 42 U.S.C. § 1983.

105. Defendant Gronda's aforementioned unlawful actions under color of state law that are actionable under to 42 U.S.C. § 1983 include, but are not limited

to, the following:

    a.    Authorizing the ATF Permit and Bridge that impedes use, enjoyment, and navigation of the canal system and damaged Torzys' interest in the Torzy Property and easement interest in the Canal System. Torzys are no longer able to use the Torzy Property for the purpose in which it was purchased.

    b.    Engaging in and applying inconsistent, arbitrary, and capricious standards and policy by authorizing the ATF Permit and Bridge. For example, Defendant denied Burnett's permit for the erection of a boathouse because it *"will result in a more than minimal disruption"* to the Canal System and impede navigation; but on the other hand, Defendant authorized Hobig's ATF Permit for a bridge that completely blocks the Canal System and obstructs Plaintiffs' ability to access the South Channel from the Torzy Property. Also, Defendant authorized the Bridge knowing that the Bridge does not even comply with the ATF Permit that she issued, and poses a significant safety concern to the Plaintiffs, the public, and the environment.

    c.    Applying inconsistent standards and deviating from NREPA and standard protocols, to approve the ATF Permit and Bridge, allowing the Bridge to foreclose navigation of the canal system.

    d.    Applying standards to approve the ATF Permit that deviate from EGLE's policy on bridges such as approving a structure that forecloses navigation of the canal system.

    e.    Depriving Plaintiffs of the right to use and enjoy the Torzy Property and subject canal system without the unlawful interference and threats from state actors – the Defendant – that such rights will be taken, damaged, interfered with and interrupted.

106. As a direct and proximate result of Defendant's actions, Plaintiffs have

suffered and will continue to suffer substantial damages, including, but not limited to, the loss of use and enjoyment of Plaintiffs' property rights, use of the canal system, and diminution in value of the Torzy Property.

107.   As a result of Defendant's violation of 42 U.S.C. §1983, Plaintiffs are entitled to payment of their costs and attorney fees under 42 U.S.C. §1988(b) and (c).

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendant, as follows:

A.   Enjoin the ATF Permit authorized by Defendant and order Hobig's Bridge to be removed;

B.   In the alternative, in the event that the Bridge remains, enter a monetary judgment in favor of Plaintiffs against Defendant in an amount not less than $229,000 for the diminished value of the Torzy Property;

C.   Award Plaintiffs a money judgment in an amount the jury deems appropriate, including punitive damages and Plaintiff's costs and attorney fees; and

D.   Award such other legal, equitable, and injunctive relief as this Court considers just and proper.

## COUNT II
## VIOLATION OF DUE PROCESS

108.   Plaintiffs incorporate all previous allegations as if fully restated herein.

109.   Plaintiffs possess property rights protected under the United States and

Michigan Constitutions, including all rights relating to ownership and possession of the Torzy Property, a portion of the bottomlands of the Canal System, and an easement to use the remainder of the Canal System to ingress and egress the South Channel.

110.   In April 2024, Defendant issued the ATF Permit, which approved Hobig's Bridge and that foreclosed access to the Torzy Property to and from the South Channel, and obstructs the Torzys' easement rights in the Canal System.

111.   Defendant has taken an inconsistent policy application to structures in the subject Canal System to the detriment and damage of Plaintiffs, as alleged above.

112.   Defendant's aforementioned intentional and unauthorized interference with Plaintiffs' property rights constitutes a violation of the Fifth and Fourteenth Amendments of the United States Constitution and Art. I, § 17 and Art. X, § 2 of the Michigan Constitution of 1963, as amended, because Defendant's actions constitute a taking of Plaintiffs' property without just compensation.

113.   Defendant has made no offer to justly compensate Plaintiffs for the taking of Plaintiffs' property interest.

114.   Defendant's actions constitute violations of Plaintiffs' procedural and substantive due process rights, among other things, depriving Plaintiffs of the vested property rights without due process or possibility of just compensation.

115.   Defendant has failed to demonstrate any necessary purpose of the taking

of Plaintiffs' property.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendant, as follows:

A.    Enjoin the ATF Permit authorized by Defendant and order Hobig's Bridge to be removed;

B.    In the alternative, in the event that the Bridge remains, enter a monetary judgment in favor of Plaintiffs against Defendant in an amount not less than $229,000 for the diminished value of the Torzy Property;

C.    Award Plaintiffs a money judgment in an amount the jury deems appropriate, including punitive damages and Plaintiff's costs and attorney fees; and

D.    Award such other legal, equitable, and injunctive relief as this Court considers just and proper.

## COUNT III
## INVERSE CONDEMNATION

116.    Plaintiffs incorporate all previous allegations as if fully restated herein.

117.    The Takings Clause of the Fifth Amendment states that "private property shall not be taken for public use, without just compensation." *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 184 (2019).

118.    Both the United States and Michigan constitutions prohibit the taking of private property for public use without just compensation. *Mays v Snyder*, 323

Mich App 1, 78; 916 NW2d 227 (2018).

119.   Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency. *Id.* at 79.

120.   Inverse condemnation can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a taking. *Id.*

121.   Any injury to the property of an individual which deprives the owner of the ordinary use of it is equivalent to a taking, and entitles him to compensation. So a partial destruction or diminution of value of property by an act of government, which directly and not merely incidentally affects it, is to that extent an appropriation. *Id.*

122.   Defendant Gronda's act and approval of the ATF Permit for the Bridge caused a significant decline in the marketability and value of the Torzy Property.

123.   Most people, including the Plaintiff, purchase real estate on South Channel drive of Harsens Island to have boating access to the South Channel and Great Lakes.

124.   Plaintiffs purchased the Torzy Property because it had a South Channel side and canal side to moor boats and other watercrafts.

125.    The Bridge, and Defendant's authorization of the Bridge through the ATF Permit, foreclosed the South Channel boating access to Plaintiff, which harms the marketability and value of the Property.

126.    Plaintiffs are no longer able to use the Canal System for the purpose in which it was created, or the purpose for which Plaintiffs' purchased the Torzy Property.

127.    Plaintiffs can no longer navigate and/or moor boats in the Canal System that is used to ingress and egress the South Channel.

128.    Plaintiffs cannot moor boats on the South Channel because it is a shipping channel, which causes significant wave action and turbulence.

129.    Defendant abused her power by engaging in affirmative acts alleged above that directly affect and harm the Torzy Property, and the Torzys' interest in the Canal System.

130.    Defendant has taken an inconsistent policy application to structures in the Canal System to the detriment and damage of Plaintiffs as alleged above.

131.    Defendant's conduct is the functional equivalent of a governmental intrusion onto private property.

132.    Defendant's aforementioned intentional and unauthorized interference with Plaintiffs' property rights deprives Plaintiffs of their rights and property interests in the Torzy Property and Canal System.

133.   Defendant's aforementioned intentional and unauthorized interference with Plaintiffs' property rights denies Plaintiffs the use and enjoyment of the Torzy Property and Canal System.

134.   Defendant's aforementioned intentional and unauthorized interference with Plaintiffs' property rights impairs the value and marketability of the Torzy Property.

135.   Defendant's actions as taken under color of state law violate the Fifth and Fourteenth Amendments of the United States Constitution, which prohibits the temporary and permanent taking of private property for public use without just compensation.

136.   Defendant's overt and affirmative actions are directly aimed at Plaintiffs' property and, as such, represent an abuse of any of Defendant's legitimate governmental powers.

137.   Further, Defendant's actions have subjected the Torzys and the Torzy Property to a special injury unique to the Torzys and the Torzy Property.

138.   Defendant directed, recommended, and/or approved the intentional interference with Plaintiffs' property rights by approving the ATF Permit.

139.   As a direct and proximate result of Defendant's wrongful taking of, and damage to, the Torzy Property, including a portion of the bottomlands of the subject Canal System, Plaintiffs have suffered and/or will further suffer damages in an

27

amount to be determined by a jury, plus costs and attorney fees.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendant, as follows:

A.   Enjoin the ATF Permit authorized by Defendant and order Hobig's Bridge to be removed;

B.   In the alternative, in the event that the Bridge remains, enter a monetary judgment in favor of Plaintiffs against Defendant in an amount not less than $229,000 for the diminished value of the Torzy Property;

C.   Award Plaintiffs a money judgment in an amount the jury deems appropriate, including punitive damages and Plaintiff's costs and attorney fees; and

D.   Award such other legal, equitable, and injunctive relief as this Court considers just and proper.

## COUNT IV
## REGULATORY TAKING

140.   Plaintiffs incorporate all previous allegations as if fully restated herein.

141.   Where a governmental action deprives property owners of "all economically beneficial uses" of their property, it is a categorical regulatory taking under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009).

142.   Plaintiffs are the owners of the Torzy Property, a portion of the bottomlands of the Canal System, and an easement to use the remainder of the Canal System to ingress and egress the South Channel.

143.   In April 2024, Defendant issued the ATF Permit, which approved Hobig's Bridge that effectively forecloses access to the Torzy Property from the South Channel.

144.   Defendant's actions significantly damage the marketability, use, and value of the Property as the canal system is no longer navigable by cruisers, center consoles, or sailboats from the Torzy Property to the South Channel.

145.   As a direct and proximate result of Defendant's wrongful taking of, and damage to, the Torzy Property, including a portion of the bottomlands of the subject canal and an easement to use the remainder of the canal to ingress and egress the South Channel, Plaintiffs have suffered and/or will further suffer damages in an amount to be determined by a jury, plus costs and attorney fees.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendant, as follows:

A.    Enjoin the ATF Permit authorized by Defendant and order Hobig's Bridge to be removed;

B.     In the alternative, in the event that the Bridge remains, enter a monetary judgment in favor of Plaintiffs against Defendant in an amount not less than $229,000 for the diminished value of the Torzy Property;

C.     Award Plaintiffs a money judgment in an amount the jury deems appropriate, including punitive damages and Plaintiff's costs and attorney fees; and

D.     Award such other legal, equitable, and injunctive relief as this Court considers just and proper.

### COUNT V
### NEGLIGENCE AND GROSS NEGLIGENCE

146.   Plaintiffs incorporate all previous allegations as if fully restated herein.

147.   Defendant has a legal duty as an EGLE enforcement officer, and common law duty as an individual, to not cause harm or damage to the Torzys' property interest in the Torzy Property or Canal System.

148.   Defendant breached her duties, *inter alia*, as follows:

    a.     By issuing the ATF Permit, the Torzys are no longer able to use and enjoy the Torzy Property or Canal System for the purpose of which it was intended, as alleged above.

    b.     The loss of access to the South Channel has significantly diminished the value of the Torzy Property.

    c.     Issuing the ATF Permit even though Hobig failed to erect the Bridge in accordance with the ATF Permit, and is causing erosion and physical damage to the Torzy Property; and the

reckless Bridge construction has made it unsafe for Plaintiffs to use the Canal System.

149.   Defendant's breach of her duty is the direct and proximate cause of the injury and damages to the Plaintiffs, as they have lost the use and enjoyment of the Torzy Property and value, and Canal System.

150.   Defendant's conduct is so reckless as to demonstrate a substantial lack of concern for whether an injury results as the Bridge, as constructed, is at risk of failure.

151.   Defendant's aforementioned conduct amounts to gross negligence as it was so reckless as to demonstrate a substantial lack of concern for whether an injury results.

152.   As the direct and proximate result of Defendant's conduct, Plaintiffs have suffered and/or will further suffer damages in an amount to be determined by a jury, plus costs and attorney fees.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendant, as follows:

A.     Enjoin the ATF Permit authorized by Defendant and order Hobig's Bridge to be removed;

B.     In the alternative, in the event that the Bridge remains, enter a monetary judgment in favor of Plaintiffs against Defendant in an amount not less than $229,000 for the diminished value of the Torzy Property;

C.      Award Plaintiffs a money judgment in an amount the jury deems appropriate, including punitive damages and Plaintiff's costs and attorney fees; and

Award such other legal, equitable, and injunctive relief as this Court considers just and proper.

Warner Norcross + Judd LLP

*/s/ John A. MacKenzie*
John A. MacKenzie (P80386)
Attorneys for Plaintiffs
12900 Hall Road, Ste. 200
Sterling Heights, MI 48313
(586) 303-4100
jmackenzie@wnj.com

Dated: December 10, 2024

### Verification of Complaint

     I declare that the statements above are true to the best of my information, knowledge, and

belief.

Dated: December 6, 2024

*Mark Torzy*
Mark Torzy

STATE OF MICHIGAN     )
                        ) ss
OAKLAND COUNTY      )

     On this 6th day of December , 2024, before me, a Notary Public, personally
appeared <u>Mark Torzy</u>, known to me to be the person who executed the above instrument, and
acknowledged that the information contained in this instrument is true and accurate.

*Catherine Peto*
Catherine Peto , Notary Public
Macomb County, MI
My commission expires: 11-29-2030
Acting in Macomb County, MI

## <u>Verification of Complaint</u>

I declare that the statements above are true to the best of my information, knowledge, and

belief.

Dated: December 6, 2024

*Shannon Torzy*
Shannon Torzy

STATE OF MICHIGAN )
                     ) ss
OAKLAND COUNTY )

On this 6th day of December, 2024, before me, a Notary Public, personally
appeared <u>Shannon Torzy</u>, known to me to be the person who executed the above instrument, and
acknowledged that the information contained in this instrument is true and accurate.

*Catherine Loto*
Catherine Loto , Notary Public
Macomb County, MI
My commission expires: 11-29-2030
Acting in Macomb County, MI