UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK TORZY, an individual, and
SHANNON TORZY, an individual,

        Plaintiffs,

v

ALEXIS GRONDA, an individual,

        Defendant.

No. 2:24-cv-13277

HON. MARK A. GOLDSMITH

MAG. ELIZABETH A. STAFFORD

**DEFENDANT'S MOTION TO
DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(6)**

_____

John A. MacKenzie (P80386)
Attorney for Plaintiffs
Warner Norcross + Judd LLP
12900 Hall Rd., Ste. 200
Sterling Heights, MI 48313
(586) 303-4100
jmackenzie@wnj.com

_____

Gregory G. Justis (P78782)
Attorney for Defendant
Michigan Department of Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
justisg1@michigan.gov

_____/

LOCAL RULE CERTIFICATION: I, Gregory J. Justis, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ *Gregory G. Justis*
Assistant Attorney General
Attorney for Defendant
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
justisg1@michigan.gov

Dated:  March 7, 2025

## DEFENDANT'S MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(B)(6)

Defendant Alexis Gronda (Defendant) respectfully moves, under Fed. R.

Civ. P. 12(B)(6), to dismiss all claims asserted against her in the Complaint filed in

*Mark Torzy and Shannon Torzy v. Alexis Gronda,* No. 2:24-cv-13277.  In support,

Defendant states that Plaintiffs fail to state a claim under federal and state law.  In

particular:

1.    Plaintiffs' allegations do not meet the standard set by Fed. R. Civ.

P. 12(b)(6).

2.    Plaintiffs' claims are verifiably factually inaccurate and legally

incomplete.

3.    Plaintiffs' claims are barred by Res Judicata and Collateral Estoppel.

4.    Defendant is entitled to qualified immunity for claims against her in

her individual capacity.

    a.    Plaintiffs failed to show a violation of a statutory or

constitutional rights.

    b.    The right was not "clearly established."

5.    Plaintiffs' procedural due process rights were not violated.

    a.    Plaintiffs have no riparian interest rights in the man-made canal.

    b.    Plaintiffs have been provided with notice and an opportunity to

challenge the issuance of the permit.

6.     Plaintiffs' substantive due process rights were not violated.

7.     The issuance of a permit did not amount to a taking.

8.     Plaintiffs fail to allege facts that would support a finding of negligence.

Defendant requests this Court grant her motion for the reasons set forth above and more fully in the accompanying brief and enter its judgment in her favor on all counts.

Pursuant to E.D. Mich. LR 7.1(a), Defendant's counsel sought concurrence from Plaintiffs' counsel on March 6, 2025, on Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant's counsel outlined the nature of the Motion and its legal basis and requested, but did not obtain, concurrence in dismissal of any claims.

/s/ *Gregory G. Justis*
Assistant Attorney General
Attorney for Defendant
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
justisg1@michigan.gov

Dated:  March 7, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK TORZY, an individual, and
SHANNON TORZY, an individual,          No. 2:24-cv-13277

      Plaintiffs,                         HON. MARK A. GOLDSMITH

v                                      MAG. ELIZABETH A. STAFFORD

ALEXIS GRONDA, an individual,

      Defendant.                          **DEFENDANT'S BRIEF IN
                                       SUPPORT OF MOTION TO
                                       DISMISS PURSUANT TO
                                       FED. R. CIV. P. 12(b)(6)**

---

John A. MacKenzie (P80386)
Attorney for Plaintiffs
Warner Norcross + Judd LLP
12900 Hall Rd., Ste. 200
Sterling Heights, MI 48313
(586) 303-4100
jmackenzie@wnj.com

---

Gregory G. Justis (P78782)
Attorney for Defendant
Michigan Department of Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
justisg1@michigan.gov

            /
---

# TABLE OF CONTENTS

<div align="right">Page</div>

Table of Contents ...................................................................................... ii

Index of Authorities ................................................................................. iv

Concise Statement of Issues Presented .................................................... vii

Controlling or Most Appropriate Authority .............................................. vii

Introduction ................................................................................................1

Statement of Facts ......................................................................................2

Argument ....................................................................................................6

I.      Plaintiffs fail to state a claim under federal and state law ..............6

        A.      Legal standard under Fed. R. Civ. P. 12(b)(6) .....................6

        B.      Plaintiffs' claims are verifiably factually inaccurate and legally incomplete. .............................................................7

        C.      Plaintiffs' claims are barred by Res Judicata and Collateral Estoppel. ...........................................................8

        D.      Defendant is entitled to qualified immunity for claims against her in her individual capacity. ................................9

                1.      Plaintiffs failed to show a violation of a statutory or constitutional rights ................................................10

                2.      The right was not "clearly established." ...................12

        E.      Plaintiffs' procedural due process rights were not violated ...............14

                1.      Plaintiffs have no riparian interest rights in the man-made canal. ...........................................................14

                2.      Plaintiffs have been provided with notice and an opportunity to challenge the issuance of the permit. ...............14

F.      Plaintiffs' substantive due process rights were not violated. ..............16

G.      The issuance of a permit did not amount to a taking. .........................19

H.      Plaintiffs fail to allege facts that would support a finding of
        negligence. ..........................................................................................21

Certificate of Service ................................................................................23

# INDEX OF AUTHORITIES

<div align="right">Page</div>

**Cases**

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ..........................................................................................12

*Aquatic Mgmt. Servs. v. Dep't of Envtl. Quality*,
   No. 292365, 2010 Mich. App. LEXIS 2449 (Ct. App. Dec. 21, 2010) ..............15

*Arrington-Bey v. City of Bedford Heights*,
   858 F.3d 988 (6th Cir. 2017).................................................................................13

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) .......................................................... 9, 10, 12, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................... 7, 10, 11

*Bailey v. City of Ann Arbor*,
   860 F.3d 382 (6th Cir. 2017).................................................................................7

*Blue Harvest, Inc v. Dep't of Transp.*,
   792 N.W.2d 798 (2010)..........................................................................................20

*Charles v. Baesler*,
   910 F.2d 1349 (6th Cir. 1990)..............................................................................16

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532 (1985). ............................................................................................15

*Cty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ..............................................................................................16

*Felder v. Casey*,
   487 U.S. 131 (1988) ..............................................................................................15

*Guertin v. State*,
   912 F.3d 907 (6th Cir. 2019)................................................................................10

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ...................................................................................9

*Hays v. Jefferson Cty.,*
668 F.2d 869 (6th Cir. 1982) ...................................................................11

*Hensley Mfg. v. ProPride, Inc.,*
579 F.3d 603 (6th Cir. 2009) .....................................................................7

*Heyne v. Metro. Nashville Pub. Sch.,*
655 F.3d 556 (6th Cir. 2011) ...................................................................10

*Hunter v. Bryant,*
502 U.S. 224 (1991) .................................................................................14

*Johnson v. Moseley,*
790 F.3d 649 (6th Cir. 2015) .....................................................................9

*Kernen v. Homestead Dev. Co.,*
232 Mich. App. 503 (1998) ......................................................................13

*Lucas v. S.C. Coastal Council,*
505 U.S. 1003 (1992) ...............................................................................20

*Malley v. Briggs,*
475 U.S. 335 (1986) ...................................................................................9

*Peake v. Marada Inds. Inc.,*
No. 19-cv-13476, 2021 U.S. Dist. LEXIS 122384 (E.D. Mich.
June 30, 2021)...........................................................................................8

*Peatross v. City of Memphis,*
818 F.3d 233 (6th Cir. 2016) .....................................................................7

*Polk Cty. v. Dodson,*
454 U.S. 312 (1981) .................................................................................11

*Saucier v. Katz,*
533 U.S. 194 (2001) ......................................................................... 12, 14

*Schmidt v. Eger,*
94 Mich. App. 728 (1980) ........................................................................19

v

*Thompson v. Enz*,
    379 Mich. 667 (1967) ..................................................................... 13, 14

*White v. Pauly*,
    580 U.S. 73 (2017) ............................................................................13

*William Beaumont Hosp. v. Wass*,
    889 N.W.2d 745 (Mich. Ct. App. 2016) ...............................................8

**Statutes**

42 U.S.C. § 1983 ....................................................................................7

42 U.S.C. § 1988 ....................................................................................7

Mich. Comp. Laws § 324.32501 *et seq.* ...................................................2

Mich. Comp. Laws § 324.32510 ..............................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................. passim

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      State officials are entitled to qualified immunity unless a plaintiff alleges facts showing both 1) the violation of constitutional right; and 2) that the right was clearly established at the time of the alleged misconduct.  Here, Plaintiffs have also failed to allege facts that would establish any violation of a constitutional right.  Have Plaintiffs failed to allege the violation of a "clearly established" constitutional right?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:    Fed. R. Civ. P. 12(b)(6)

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

### INTRODUCTION

This case, an ongoing challenge to a state permitting decision made by the Michigan Department of Environment, Great Lakes, and Energy (EGLE), has been repackaged here into claims against a public servant in her personal capacity for the act of issuing the most recent permit. The permit at issue here is almost identical to those permits issued in a long line of permits dating back almost two decades, authorizing a private vehicular access bridge that provides the sole means of vehicular access to private property.

In 2018, prior to a dispute between Plaintiffs and their neighbors (the Hobigs), Plaintiffs agreed that the height of the bridge was fair and did not foreclose navigation. Plaintiff Mark Torzy has now admitted under oath that he spoke with EGLE staff prior to the purchase of the property and that EGLE staff made him aware of the permit to build the bridge. Plaintiffs remain actively engaged in an ongoing case before the Michigan Office of Administrative Hearings and Rules (MOAHR).[1] Permitting decisions under Part 325 are statutorily

---

[1] Plaintiffs are currently challenging the most recent issuance of a permit for the bridge structure in a contested case hearing before MOAHR. A hearing was held on January 27, 2025. Closing arguments were filed on March 3, 2025, and the parties are in the process of filing reply briefs.

authorized, and Defendant Gronda did not violate any of Plaintiffs' constitutional rights. Plaintiffs' Complaint should, therefore, be dismissed in its entirety.

## STATEMENT OF FACTS

In 2005, the predecessor to EGLE, the Michigan Department of Environmental Quality (MDEQ), issued Permit No. 05-74-0119-P to Richard Hobig for what was essentially the construction of a small personal vehicular access bridge, as well as accompanying seawall and bridge abutments, at his property at 8760 South Channel Dr., Harsens Island, MI 48028. The permit was issued pursuant to Part 325, Great Lakes Submerged Lands, of the Natural Resources and Environmental Protection Act (NREPA), Mich. Comp. Laws § 324.32501 *et seq.* (Part 325).

The issuance of the permit was contested at the time. The contested case process ultimately resulted in a Final Determination and Order from the MDEQ, finding that Mr. Hobig was entitled to the permit. The issuance of Permit No. 05-74-0119-P was upheld. (ECF No. 10-7.) The Plaintiffs' predecessor in interest appealed that decision to the St. Clair County Circuit Court, which upheld the Final Determination. (ECF No. 10-5.) However, Mr. Hobig did not complete construction before the permit expired.

On May 25, 2011, the MDEQ issued Permit No. 11-74-0040-P to Mr. Hobig for essentially the same project at his property. (ECF No. 10-10.) The permit was

issued pursuant to Part 325 and expired on May 25, 2016; again, construction was incomplete when the permit expired.

On September 23, 2016, MDEQ issued Permit No. WRP004432 to Mr. Hobig for, again, construction of a small vehicular access bridge, as well as accompanying seawall and bridge abutments, at his property.  (ECF No. 10-16.) The Torzys purchased the neighboring property on January 13, 2017, while Mr. Hobig already had an active permit for the construction of the bridge.  (ECF No. 1-4, PageID.39-59.)  When the Torzys purchased the property, the large steel pilings that would eventually form the foundation of the bridge were already installed, and only the deck remained to be built.  *Id.*

However, at the request of Mr. Hobig, the permit was revised on March 1, 2017.  The permit was challenged on March 31, 2017, but the challenge was voluntarily dismissed with prejudice on August 28, 2017.  (ECF No. 10-20.) Again, the permit expired on September 23, 2021.  After expiration of the permit, Mr. Hobig finished construction of the top portion of the bridge.  As a result, Plaintiffs complained to EGLE.  (ECF Nos. 10-2 and 10-3.)

On June 9, 2023, EGLE's Water Resources Division (WRD) performed an inspection of Mr. Hobig's property to evaluate compliance with Part 325 and Permit No. WRP004432.  (ECF No. 10-2.)  During the inspection, the WRD documented unauthorized activities, including work completed beyond the

permit's expiration date.  As a result, the WRD issued Violation Notice No. VN-014611 to Mr. Hobig.  (ECF No. 10-23.)

On June 22, 2023, the Torzys filed a Complaint in St. Clair County Circuit Court, naming Richard and Susan Hobig as defendants.  (ECF No. 10-6.)  On August 2, 2023, the Torzys filed a First Amended Complaint asserting five counts: (1) nuisance; (2) violation of the Public Trust Doctrine; (3) violation of the Natural Resources and Environmental Protection Act, Mich. Comp. Laws § 324.32510; (4) breach of quasi contract; and (5) contribution.  Plaintiffs also sought a temporary restraining order and preliminary injunction in the Circuit Court but were denied.  *Id.*

On September 29, 2023, Richard Hobig submitted an application to the WRD seeking an after-the-fact permit under Part 325 for the prior installation of a 60-foot-long by 14-foot-wide bridge affixed to a 40-foot-long, 8-foot-wide, 1-foot-deep riprap abutment and a 24-foot-long by 4-foot-wide dock structure within a 10-foot-long by 12-foot-wide platform structure to the waterward end.  The WRD determined the permit application was administratively complete on October 29, 2023, and it was placed on public notice from February 21, 2024, to March 12, 2024.  (ECF Nos. 10-26 through 10-35.)  In the meantime, on February 23, 2024, the Hobigs sought partial summary disposition on the first three of the claims brought against them in Circuit Court.  (ECF No. 10-6.)

4

Based on the information in the permit application, the public notice, and the permitting criteria under Part 325, the WRD determined that an after-the-fact permit could be issued for the project. The WRD's position is that the project meets the criteria for permit issuance under Part 325 and would not result in adverse impacts to riparian rights, public trust, or the environment. In addition, the activities included in the after-the-fact permit application were largely the same as those authorized by prior permits. Therefore, on April 15, 2024, the WRD issued Permit No. WRP040963 for the vehicular access bridge. (ECF No. 10-33.) On April 30, 2024, the Torzys filed a petition with MOAHR, challenging the issuance of the permit. (ECF No. 10-39.)

On August 21, 2024, St. Clair County Circuit Court granted the Hobigs' motion for partial summary disposition.[2] (ECF No. 10-8.) The Circuit Court noted that despite some changes from the 2006 permit to the 2016 permit, the factual and legal issues surrounding riparian rights and navigability were long ago settled. *Id.* Specifically, the Circuit Court said:

> The bridge does not adversely affect pleasure boating and navigation. Plaintiffs still navigate the canal and access the South Channel from their property. Plaintiffs seem to contend they are entitled to perfect, unrestricted, and unlimited access to their property from the South Channel. Without riparian rights, Plaintiffs have no legal basis to make that claim. The DEQ final order has resolved, with finality, the

---

[2] The Court would later deny Plaintiffs' motion to amend, and eventually the remaining claims unrelated to the vehicular access bridge would be dismissed by agreement of the parties. (ECF No. 10-6.)

issues of navigation and pleasure boating on the canal.  The doctrines of res judicata and collateral estoppel would serve no purpose if they were disregarded because as time goes by everybody wants a bigger boat.  (*Id*. at PageID.372.)

The Court also found that Mark Torzy and his son were able to get their boats in the water and navigate under the bridge.  (*Id.* at PageID.375.)

On October 22, 2024, a prehearing conference for the proceeding before MOAHR was held before ALJ Paul Smith.  At the pre-hearing, the parties, represented by counsel, stipulated that: (1) the proposed activity (for which Mr. Hobig sought a permit) is regulated; (2) a permit was required for the proposed activity; (3) EGLE has jurisdiction; and (4) the permit file is administratively complete.  (ECF No. 10-40.)

A contested case hearing on the permit issued to Mr. Hobig took place before ALJ Paul Smith on January 27, 2025.  A transcript of the hearing is attached as Exhibit A.

## ARGUMENT

### I.    Plaintiffs fail to state a claim under federal and state law.

#### A.    Legal standard under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6) a court accepts all well-pleaded factual allegations in the complaint as true; however, the court does not "accept as true a legal conclusion couched as a factual allegation," mere labels or conclusions, or "formulaic recitation[s] of the elements of a cause of action."  *Hensley Mfg. v.*

6

*ProPride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009) (internal citations omitted).  Nor

does it accept factual allegations in a complaint as true unless they are plausible.

*See id*.  If the allegations in a complaint contradict "verifiable facts," then "even at

the motion to dismiss stage," those allegations are not plausible.  *Bailey v. City of*

*Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).

Dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(6) when a party's

complaint does not advance a "facially plausible" claim with "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir.

2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**B.**     **Plaintiffs' claims are verifiably factually inaccurate and legally incomplete.**

Plaintiffs assert five claims against Defendant: Count I (violation of 42

U.S.C. § 1983 and § 1988), Count II (claim for substantive and procedural due

process violations),[3] Count III (inverse condemnation)[4], Count IV (Regulatory

Taking), Count V (Negligence and Gross Negligence).  As discussed below in

sections E-H, each of Plaintiffs' claims are legally incomplete or obviously false

based on even just Plaintiffs' own stipulations and testimony made under oath.

---

[3] This count is labeled "due process" but references both procedural and
substantive due process in the form of a taking.

[4] Counts III and IV also allege a taking.

**C.**     **Plaintiffs' claims are barred by Res Judicata and Collateral Estoppel.**

While each permit application is reviewed by EGLE individually, the issues surrounding riparian rights for this property in this specific portion of the channel, and potential impacts to navigability, are legal questions that have long ago been settled.  "A decision reached in an administrative proceeding can be binding on the parties in a subsequent judicial proceeding.  As the Michigan Court of Appeals has stated, "[t]he preclusion doctrines [of res judicata and collateral estoppel] are applicable to administrative decisions (1) that are 'adjudicatory in nature,' (2) when a method of appeal is provided, and (3) when it is clear that the Legislature 'intended to make the decision final absent an appeal.'" *Peake v. Marada Inds. Inc.,* No. 19-cv-13476, 2021 U.S. Dist. LEXIS 122384 (E.D. Mich. June 30, 2021), citing *William Beaumont Hosp. v. Wass*, 889 N.W.2d 745, 750 (Mich. Ct. App. 2016).

The dispositive factual and legal questions underlying each claim have already been settled in both the initial administrative proceeding and appeal conducted by Plaintiffs' predecessor in interest, David Fullington, and analogously to Plaintiffs' recent attempt to relitigate the matter in Circuit Court.  (ECF Nos. 10-2 through 10-9; *see also* further discussion in ECF No. 10).  The Circuit Court noted that (as is the case here) "in order to resolve [the Torzys'] claims, this Court must relitigate the same factual claims" that have been previously determined."

8

(ECF No. 10-8, PageID.373-374).  Plaintiffs' claims should fail in this Court as well.

> **D.    Defendant is entitled to qualified immunity for claims against her in her individual capacity.**

To the extent that Plaintiffs seek monetary damages from Defendant in her personal capacity for their constitutional claims, they are barred from relief under the doctrine of qualified immunity.  The doctrine of qualified immunity protects individual government officials from liability for civil damages arising from their discretionary conduct "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  It shields "all but plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  Qualified immunity is intended to give "governmental officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011).

To survive a motion to dismiss grounded on qualified immunity, a plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established [by] law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley,* 790 F.3d 649, 653 (6th Cir. 2015).  The plaintiff also must

9

allege with particularity "facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.,* 655 F.3d 556, 564 (6th Cir. 2011) (internal citations and quotation marks omitted, emphasis original). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Id.* at 562-63.

Once a government defendant raises the defense of qualified immunity, the burden shifts to the plaintiff to show two things: (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *al-Kidd,* 563 U.S. at 735. Unless both 1 and 2 are shown, the defendant is entitled to the defense of qualified immunity. Plaintiffs fail to meet that burden, and dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(6).

## 1.   Plaintiffs failed to show a violation of a statutory or constitutional rights

When examining Plaintiffs' § 1983 claim against Defendant in her individual capacity, the Court must "focus . . . on each individual defendant's conduct." *Guertin v. State*, 912 F.3d 907, 926 (6th Cir. 2019). That is because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. And "[i]t is a plaintiff's burden to

specifically link the officer's involvement to the constitutional infirmity . . .."
*Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016).  In other words, "[s]ection
1983 will not support a claim based on a *respondeat superior* theory of liability."
*Polk Cty. v. Dodson,* 454 U.S. 312, 325 (1981).  Moreover, the supervisor must
have directly participated in the alleged unconstitutional act.  *Hays v. Jefferson
Cty.,* 668 F.2d 869, 874 (6th Cir. 1982).

Here, Plaintiffs fail to specifically identify how Ms. Gronda violated their
constitutional rights.  Plaintiffs' own stipulations, admissions, and communications
demonstrate the verifiably inaccurate claims, incomplete, and nonspecific claims.
As discussed in detail below in sections E-H, Plaintiffs' claims are wholly
insufficient, because a pleading that simply "offers labels and conclusions or a
formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556
U.S. at 678 (citation omitted).

When read as whole, the Complaint essentially argues that Plaintiffs are
unhappy with the issuance of the after-the-fact permit.  Yet, Plaintiffs agreed in
writing that the 2016 permit height was fair and did not impede navigation.  (ECF
No. 10-42.)  Plaintiffs already stipulated that a permit issued by EGLE was
required, and that EGLE had jurisdiction.  (ECF No. 10-40.) To entertain this
action further would create a chilling effect for state employees.  Defendant's

actions did not violate Plaintiffs' constitutional rights, and therefore Plaintiffs'

§ 1983 claim must fail.

### 2.     The right was not "clearly established."

Even if Plaintiffs *could* establish the violation of a constitutional right, it

could not be said to be clearly established.  To be "clearly established" for

qualified immunity purposes, "[t]he contours of the right must be sufficiently clear

that a reasonable official would understand that what he is doing violates that

right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Although "the very

action in question" does not have to have "previously been held unlawful," still,

"in light of the pre-existing law, the unlawfulness must be apparent." *Id*.  The

Supreme Court has required the unlawfulness to be so apparent, in fact, that case

law places "the statutory or constitutional question *beyond debate*." *al-Kidd*, 563

U.S. at 741 (citation omitted) (emphasis added).  Further the alleged right must be

extremely well defined, for if the Court were to deny immunity based solely on

general legal rules, it would "convert the rule of qualified immunity . . . into a rule

of virtually unqualified liability simply by alleging violation of extremely abstract

rights." *Anderson*, 483 U.S. at 639.

Accordingly, the right alleged to have been violated must be defined in a

way that is "particularized" to the facts of the case. *Saucier v. Katz*, 533 U.S. 194,

201-202 (2001).  The Supreme Court has required lower courts to "identify a case

where [an official] acting under similar circumstances . . . was held to have violated" the law. *White v. Pauly*, 580 U.S. 73, 79 (2017).  And the Sixth Circuit emphasized that "a plaintiff must identify a case *with a similar fact pattern* that would have given 'fair and clear warning to [officials]' about what the law requires." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 993 (6th Cir. 2017) (emphasis added) (citing *White*, 580 U.S. at 79) (quotation omitted).

Plaintiffs do not plausibly allege that Defendant's conduct violated a clearly established constitutional right.  EGLE has broad authority to regulate under Part 325.  Plaintiffs already stipulated that a permit issued by EGLE was required, and that EGLE had jurisdiction.  (ECF No. 10-40.)  Following that stipulation, Plaintiffs now curiously argue that not only did Defendant lack such authority to act, but that her actions violated their clearly established rights.  And even if Plaintiffs argue that their alleged property right is derived from a riparian right in the subject canal, their argument fails.  Michigan law is clear (and the Circuit Court has held repeatedly) that no riparian right exists:

> Plaintiffs have no riparian rights in the man-made canal.  They didn't exist in 2006 and they do not exist today. *Kernen v Homestead Dev. Co,* 232 Mich App 503, 511 (1998), *Thompson v Enz,* [3]79 Mich 657, 659 (1966).  The bridge does not adversely affect pleasure boating and navigation.  (ECF No. 10-8, PageID.372.)

However, even if the decision to issue the permit was not supported by law, qualified immunity would still shield Defendant Gronda from suit, so long as her

mistake as to the legality of her actions was reasonable. *Saucier*, 533 U.S. at 205-6. Under federal law, qualified immunity provides "ample room for mistakes in judgment." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Here, any potential unlawfulness was not so apparent that its constitutional question is beyond debate. *See al-Kidd,* 563 U.S. at 741.

Plaintiffs cannot establish a violation of any constitutional right (discussed below), let alone a clearly established constitutional right. Defendant is entitled to qualified immunity. Therefore, Plaintiffs claims should be dismissed.

### E.   Plaintiffs' procedural due process rights were not violated.

#### 1.   Plaintiffs have no riparian interest rights in the man-made canal.

Plaintiffs do not have riparian rights in the man-made canal, and their due process rights were not violated. "Artificial water courses are waterways that owe their origin to acts of man . . .. Land abutting on an artificial water course has no riparian rights." *Thompson v. Enz*, 379 Mich. 667, 679 (1967) (internal citations omitted). (ECF No. 10-7; ECF No. 10-8.)

#### 2.   Plaintiffs have been provided with notice and an opportunity to challenge the issuance of the permit.

Defendant has provided a more complete recitation of the applicable requirements of due process in her prior filing. However, "The essential requirements of due process . . . are notice and an opportunity to respond. The

opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985).

Here, Plaintiffs were provided notice prior to the issuance of the permit and have at all times been provided an opportunity to participate in the permitting process.  Even now, the Plaintiffs are engaged in a challenge to the issuance of the permit before MOAHR.  Plaintiffs, represented by counsel, admitted via stipulation, among other things, that EGLE had jurisdiction and that a permit was required.  Plaintiffs, again represented by counsel, attended the contested case hearing on January 27, 2025, and had an opportunity to present witnesses and evidence.  Plaintiffs' procedural due process rights have not been violated by Defendant Gronda.  *Aquatic Mgmt. Servs. v. Dep't of Envtl. Quality,* No. 292365, 2010 Mich. App. LEXIS 2449, at 28 (Ct. App. Dec. 21, 2010), distinguishing *Felder v. Casey,* 487 U.S. 131 (1988), and suggesting that even where exhaustion of administrative remedies was not required for a § 1983 claim, failure to do so could prevent a finding of due process violation where available remedies were not exhausted. Again, there is no factual or legal support for Plaintiffs' claims, and they should fail.

### F.      Plaintiffs' substantive due process rights were not violated.

Plaintiffs next argue that issuance of the permit violated their substantive

due process rights.  (ECF No. 1, PageID.23.)  "Substantive due process affords

only those protections so rooted in the traditions and conscience of our people as to

be ranked as fundamental." *Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir.

1990).  Furthermore, the Supreme Court has repeatedly emphasized that when the

alleged source of a substantive due process violation is the decision of a

government actor, "only the most egregious official conduct can be said to be

"arbitrary in the constitutional sense." *Cty. of Sacramento v. Lewis,* 523 U.S. 833,

846 (1998) (internal citations omitted).  "[T]he substantive component of the Due

Process Clause is violated by executive action only when it 'can properly be

characterized as arbitrary, or conscience shocking, in a constitutional sense.'"

*Sacramento*, 523 U.S. at 847.

Here, the issuance of the permit did not offend Plaintiffs' substantive due

process rights.  Plaintiffs stipulated that EGLE had jurisdiction and that a permit

was required.  (ECF No. 10-40.)  In 2018, Plaintiffs agreed that at the height

permitted, the bridge was acceptable.[5]  (ECF No. 10-42.)  Only after a neighborly

---

[5] In 2018, Plaintiffs sent EGLE staff a letter that included this paragraph: "Permit
WRP004432 was issued September 23, 2016, approximately 5 months before we
purchased 8800 South Channel Dr., Harsens Island.  We would be in agreement to
what permit WRP004432 has of 582.76 IGLD 1985 since it was already issued.

16

falling-out did Mr. Torzy decide he would "drain [his] 401k" fighting Mr. Hobig. (ECF No. 10-3.)

The Circuit Court has already reviewed the previously issued permit, and the current permit is being challenged before MOAHR. Plaintiffs' own witnesses testified at a MOAHR hearing that pedestrian and vehicular bridges of this type are common on Harsens Island — so common that Plaintiffs' own appraiser indicated that he used similar properties that exist on the interior of the island and have bridges between their property and the South Channel to determine the appraised value of the Plaintiffs' property. Specifically, Mr. Kleck said:

> From there, my goal was to, first, establish a ratio, determining the difference of the property that has a similar burden, and one that did not. So looking comparable sales along the South Channel. There is a small pocket of homes that have similar -- similarly built on islands, where some homes were built on the interior of this island, where they are blocked in, so the rear canals are only accessible by smaller boats. (Ex. A, Transcript, p 51, lns 9-16.)

Plaintiffs readily admit that they can navigate boats, including a pontoon, under the vehicular access bridge. Ex. A, Transcript, p 24, ln 22. *See also* ECF No. 10-8, PageID.375. EGLE staff also testified that there is simply no impact to the public trust.

---

That would be fair to the Torzy family *allowing our canal not to be land locked*." (Emphasis supplied.) (ECF No. 10-42.)

> These little back canals have very limited public use, and
> have had that limited public use for a hundred years.
> Small fishing boats can go back in there.  Kayaks and
> canoes can go under this bridge all day long.  Small
> fishing boats can go under the bridge all day long.  Small
> center consoles can go under this bridge.  So the public's
> use of the water is not eliminated.  (Ex. A, Transcript,
> p 144, lns 18-25.)

EGLE staff ensured the height of the proposed structure was consistent with

what had been previously authorized, which was, on average, two feet higher, than

similar bridges in the area.  Ex. A, Transcript, pp 87-88; ECF No. 10-7,

PageID.349.  In 2018, Plaintiffs admitted in writing to EGLE staff that the bridge

height was fair.  (ECF No. 10-42.)

Further, Plaintiffs' own witness testified that he had no safety concerns

about the bridge as permitted in 2016.  Ex. A, Transcript, p 71, ln 4.  Inexplicably,

prior to writing the report provided to this court in support of this litigation,

Plaintiffs' expert never reviewed the current permit.  *Id.* at p 68, lns 3-7.  In fact,

the report was written a *month prior* to the issuance of the permit, and Plaintiffs'

expert did not go out to the Hobig property after the permit was issued.  *Id.* at p 68,

lns 3-7; ECF No. 5-5.

Further, while Plaintiff stresses the existence of an easement, and points to

ongoing permitting discussions at the Burnett property — those arguments are

misplaced.  Ex. A, Transcript, p 116, ln 23.  These cases involve two wholly

different canals and structure types. *Id.* at p 113, lns 1-9. As Mr. Hartz testified succinctly"

> They're different; they're different. And the public – and the public's expectation of use is different than those canal systems. Mr. Burnett's canal is not a dead end canal behind someone's home. It's got a different layout within the waterway. (*Id.* at p 138, lns 18-22.)

Further, the Burnett matter involves the specific location of a boathouse (with many alternative configurations), not a bridge providing the sole means of vehicular access to the Hobig property. *Id.* As such, EGLE WRD staff testified that there were no feasible and prudent alternatives for the proposed project. *Id.* at p 113, lns 15-17, and p 145, lns 20-23; *see* ECF No. 10-7, PageID.350.[6]

### G.    The issuance of a permit did not amount to a taking.

Plaintiffs appear to argue that the issuance of the permit effected both an inverse condemnation (Count III) and regulatory taking (Count IV) of Plaintiffs' property. "Generally, a plaintiff alleging a de facto taking or inverse condemnation must establish (1) that the government's actions were a substantial

---

6 There is also no support in the law for Plaintiffs' argument that the existence of a possible easement in one distinct canal makes every other canal in the system subject to the same easement. Ex. A, Transcript, at p 116, ln 23. An easement within a roadway, or property, does not extend to every connected property or roadway. For general discussion on easements by necessity, *see Schmidt v. Eger,* 94 Mich. App. 728, 732 (1980): "Mere convenience, or even reasonable necessity, will not be sufficient if there are alternative routes, even if these alternatives prove more difficult or more expensive."

cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Blue Harvest, Inc v. Dep't of Transp.,* 792 N.W.2d 798 (2010).  As fully discussed above, there is no legitimate argument that Defendant abused her power.  Therefore, Plaintiffs claims should be dismissed.

While Plaintiffs include a count titled "Regulatory Taking" and cite the standard established under *Lucas v. S.C. Coastal Council,* 505 U.S. 1003 (1992)*,* the Complaint lacks any explanation as to how Defendant's actions effected a regulatory taking.  Plaintiffs' own cited legal authority (connecting a regulatory taking to a deprivation of "all economically beneficial uses") supports that there is, again, no plausible argument that a regulatory taking has occurred when Plaintiffs can navigate boats, including their pontoon, under the small vehicular access bridge and have direct access to the South Channel on the other side of their property.  *Lucas*, 505 U.S. at 1018 (internal citations omitted).)

Perhaps most notable, Mr. Torzy admitted to speaking with Mr. Hartz prior to purchasing the property.  Ex. A, Transcript, p 42, ln 18.  However, Mr. Torzy did not have a clear recollection of that conversation.  *Id.* at p 21.  Mr. Hartz very clearly remembered the conversation and testified that Mr. Hartz made Mr. Torzy well aware of the history on the property.  *Id.* at p 127, ln 23, and p 128, ln 2.  Mr. Hartz also informed Mr. Torzy about the existence of Mr. Hobig's valid permit.

*Id.* There was a valid permit for the construction of the bridge at the time the Torzys purchased the property on January 13, 2017.  *Id.*  When the Torzys purchased the property, the large steel pilings that would eventually form the foundation of the bridge were also already installed, and only the deck remained to be built.  *Id*.  Any assertion that the Torzys were not actually informed about the construction of the bridge is simply not supported by the facts.  Plaintiffs' claims in Count III and IV have no factual or legal support and should be dismissed.

### H.   Plaintiffs fail to allege facts that would support a finding of negligence.

Plaintiffs' Complaint here is again lacking.  Plaintiffs' allegation of negligence is overly broad and fails to identify a duty recognized in law that was owed to Plaintiffs, and also fails to identify the specific act of the Defendant that breached the hypothetical duty..  Defendant was not, and is not, responsible for the construction of the bridge.  (ECF No. 10-2.)  Plaintiffs' own expert who provided a report to this Court has admitted that he had never reviewed the subject permit or visited the property after it was issued.  ECF No. 5-5, PageID.179-192; Ex. A, Transcript, p 68, lns 3-7.  Plaintiffs' expert also previously testified that his concern related to the 2016 permit had to do primarily with construction, not how the project was permitted.  *Id.* at p 71, ln 4.  EGLE did review the permit application and consider potential environmental impacts.  *Id.* at p 119, lns 10-17,

and pp 105-106; ECF No. 10-32.  EGLE inspected the property and saw no

evidence of erosion.   Ex. A, Transcript, p 106, ln 15.

EGLE staff testified that as permitted in 2024, the activity included design

elements that were even less likely to cause adverse impacts than some elements

within the 2016 permit.  *Id.* at p 119, lns 10-17, and pp 105-106; ECF No. 10-32

("EGLE reviewed this deviation and determined that rock was a less impactful

alternative to steel seawall").  Plaintiffs have failed to allege how the approval of

the permit constituted an act of negligence, let alone gross negligence.  Therefore,

Plaintiffs' claims should be dismissed.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Defendant respectfully requests that the claims

asserted against her by Plaintiffs be dismissed pursuant to Fed. R. Civ.

P. 12(b)(6).)

<div style="margin-left:40%">

/s/ *Gregory G. Justis*
Assistant Attorney General
Attorney for Defendant
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
justisg1@michigan.gov

</div>

Dated:  March 7, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2025, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ *Gregory G. Justis*
Assistant Attorney General
Attorney for Defendant
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
justisg1@michigan.gov

Dated:  March 7, 2025

LF:  Torzy, Mark, et al. v Gronda, Alexis (EGLE) ED/AG# 2025-0419656-A/Brf in Support of Def's Mtn to Dismiss 2025-03-07