UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK TORZY, et al.,

     Plaintiffs,

v.

ALEXIS GRONDA,

     Defendant.

_____/

Case No. 24-cv-13277
HON. MARK A. GOLDSMITH

## <u>OPINION & ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 11)</u>

Plaintiffs Mark Torzy and Shannon Torzy allege that Defendant Alexis Gronda, a state environmental officer, violated their constitutional and property rights by issuing a permit allowing their neighbor to build a bridge impeding the Torzys' access to the canal system bordering their property. Before the Court is Gronda's motion to dismiss, (Dkt. 11) which the Court converted to a motion for summary judgment pursuant to Federal Rule of Procedure 12(d) (Dkt. 21). For the reasons that follow, the Court grants Gronda's motion in part, by awarding her summary judgment on the federal claims and dismissing the state claims without prejudice.[1]

## I.    BACKGROUND

Since January 2017, the Torzys have owned a property, 8800 South Channel Drive, on Harsens Island, Michigan. Mark Torzy Aff. ¶¶ 2, 9 (Dkt. 12-3). At the time of the purchase, the property provided direct and unimpeded water access to the South Channel, which connects Lake

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes the Torzys' response (Dkt. 12), Gronda's supplemental brief (Dkt. 22), and the Torzys' supplemental brief (Dkt. 23).

St. Clair and Lake Huron, and access to the Seminole Canal—both of which are part of a canal system for swimming, fishing, boating, and other activities.  Id. ¶¶ 10–12.  The Torzys and their predecessors in interest have used the South Channel for ingress and egress to the canal system. Id.  The South Channel is the only navigable waterway that connects to the canal system and provides water access to the Torzy property.  Id. ¶ 13.

In 2023, the Torzys' neighbor, Richard Hobig, erected a bridge across the Seminole Canal, which abuts the Torzys' property and Hobigs' property and is the only means of access to the South Channel from the Torzy' property.  Id. ¶¶ 14, 16.  Because Hobig did not have a valid permit, the Torzys submitted a complaint to the Michigan Department of Environment, Great Lakes, and Energy Water Resources Division (EGLE).  Gronda Aff. ¶ 12 (Dkt. 10-2).  Gronda, an EGLE enforcement officer, issued a violation notice to Hobig for erecting the bridge without a permit. Mark Torzy Aff. ¶ 25.  Hobig then applied for an after-the-fact permit, prompting the Torzys to send objections to Gronda because the bridge obstructed the use of their property and damaged their property's value.  Gronda Aff. ¶¶ 8–11.  Despite the Torzys' objections, Gronda approved an after-the-fact permit, in April 2024, authorizing Hobig's bridge to remain.  Id.

The Torzys filed a complaint in St. Clair County Circuit Court against Hobig.  Cir. Ct. Compl. (Dkt. 10-6).  Hobig filed a motion for partial summary disposition, which the circuit court granted.  8/21/2024 Op. & Order (Dkt.10-8).  The Torzys also filed an appeal with Michigan Office of Administrative Hearings and Rules (MOAHR).  MOAHR Compl. (Dkt. 10-39).  A hearing before an administrative law judge was held In January 2025.  Hr'g. Tr. (Dkt. 11-1).  In May 2025, the ALJ issued a final decision affirming the issuance of the permit.  ALJ Decision (Dkt. 15-1). The Torzys appealed that decision to the Director of EGLE, who issued an opinion adopting the ALJ decision "in whole."  Op. of the Dir. (Dkt. 22-1).

In addition to these state and administrative filings, the Torzys initiated the present action, in which they allege that through her issuance of the permit, Gronda has (i) deprived the Torzys of their rights under 42 U.S.C. § 1983, (ii) violated their due process rights, (iii) inversely condemned their property, (iv) committed a regulatory taking, and (v) committed gross negligence. Compl. ¶¶ 102–152 (Dkt. 1).  Gronda filed a motion to dismiss, which the Court converted to a motion for summary judgment pursuant to Federal Rule of Procedure 12(d).

## II.   ANALYSIS[2]

In her motion, Gronda argues that the counts against her should be dismissed because: (i) the Torzys' claims are barred by res judicata and collateral estoppel; (ii) Gronda is entitled to qualified immunity for claims against her in her individual capacity; and (iii) the Torzys' procedural due process rights were not violated.  Mot. at 8–22.

### A.  Qualified Immunity

Gronda argues that the Torzys' claims against her in her personal capacity are barred by the doctrine of qualified immunity.  That doctrine protects individual government officials from liability for civil damages arising from their discretionary conduct "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  It "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (punctuation modified).

---

[2] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007).  If a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the Court will grant the motion. Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by presenting evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

Once a government official raises the defense of qualified immunity, the burden shifts to the plaintiff to show two things: (i) that the official violated a statutory or constitutional right, and (ii) that the right was "clearly established" at the time of the challenged conduct.  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).  The Court has the discretion to decide which element to address first.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  When examining the Torzys' § 1983 claim against Gronda in her individual capacity, the Court must "focus . . . on each individual defendant's conduct."  Guertin v. State, 912 F.3d 907, 926 (6th Cir. 2019).  That is because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).  And "it is a plaintiff's burden to specifically link the officer's involvement to the constitutional infirmity."  Burley v. Gagacki, 834 F.3d 606, 615 (6th Cir. 2016).  Here, the constitutional rights the Torzys raise in their complaint are their due process and the unlawful taking of their property without compensation under the Fifth and Fourteenth Amendments, but it is unclear how Gronda violated these rights.  Compl. at ¶¶ 121, 118, 135.  Even if the Torzys could establish the violation of a constitutional right, they must also show that the right is clearly established.

To be "clearly established" for qualified immunity purposes, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Although "the very action in question" does not have to have "previously been held unlawful," still, "in light of the pre-existing law the unlawfulness must be apparent."  Id.  The Supreme Court has required the unlawfulness to be so apparent, in fact, that case law places "the statutory or constitutional question beyond debate."  al-Kidd, 563 U.S. at 741.  The right alleged to have been violated must be defined in a way that is "particularized" to the facts of the case.  Saucier v. Katz, 533 U.S. 194, 202 (2001).

4

And the Sixth Circuit emphasized that "a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to [officials]' about what the law requires." Arrington-Bey v. City of Bedford Heights, 858 F.3d 988, 993 (6th Cir. 2017).

The Torzys have not offered a single case with a similar fact pattern—or any case at all—establishing these rights.  For the reasons discussed below, the Torzys have failed to show that Gronda has violated a right that was "clearly established" at the time of the challenged conduct, so their claims are barred by qualified immunity.

### 1. Due Process[3]

The Torzys argue that issuance of the permit violated their substantive due process rights in the following ways: (i) it was inconsistent with Gronda's decision to decline the permit application of another neighbor to build a structure in the same canal system, (ii) the bridge, as constructed, was not consistent with the after-the-fact permit requirements, and (iii) the issuance of the after-the-fact permit violates the Torzys' easement rights.  Compl. ¶¶ 108–115.

"Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental."  Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir. 1990) (punctuation modified).  Furthermore, the Supreme Court has repeatedly emphasized that when the alleged source of a substantive due process violation is the decision of a government actor, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense."  City of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (punctuation modified).  "[T]he substantive component of the Due Process Clause is violated by executive

---

[3] The Torzys only respond to Gronda's arguments regarding substantive due process and do not address Gronda's procedural due process arguments.  As such, they have forfeited any argument that their procedural due process claim should survive summary judgment.  See Briggs v. Univ. of Detroit-Mercy, 22 F. Supp. 3d 798, 811 (E.D. Mich. 2014) ("If a party fails to respond to an argument raised in a motion the court can assume that opposition to the motion is waived and the motion may be granted.") (punctuation modified).

action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Sacramento, 523 U.S. at 847 (punctuation modified).  "It is extremely rare for a federal court properly to vitiate the action of a state administrative agency as a violation of substantive due process.  The vast majority of such attacks may readily be disposed of on summary judgment . . . thus keeping interference by federal courts with local government to a salutary minimum." Pearson v. Grand Blanc, 961 F.2d 1211, 1222 (6th Cir. 1992) (punctuation modified). "Review of state administrative action is primarily a matter for state courts." Id.  An "erroneous interpretation" is not "enough to violate substantive due process.  Otherwise, zoning administrators would be on the hook for every wrong interpretation they make." Golf Vill. North, LLC v. City of Powell, 42 F.4th 593, 602 (6th Cir. 2022).  The Sixth Circuit has held that allegations that a permitting decision was made for pretextual reasons and similar behavior amounting to "petty harassment" does not necessarily amount to a constitutional deprivation.  Id.  None of the Torzys' arguments meets this high bar.

The Torzys suggest that Gronda's issuance of the permit was arbitrary and capricious because while she granted Hobig the permit to build the bridge over the Canal system, she also denied another neighbor (Nicholas Burnett) a permit to build a boathouse for the reason that "the development of the proposed boathouse will result in a more than minimal disruption."  Resp. at 20 (quoting Burnett Denial Ltr. at PageID.999 (Dkt. 12-16)).  The Torzys also argue that the Hobig bridge, as erected, does not comply with the after-the-fact permit in several ways.  Compl. at ¶ 67. They claim that Gronda was provided with an expert report informing of the bridge's alleged lack of compliance with the permit, but she issued the permit anyway.  Finally, the Torzys argue that the after-the-fact permit approving the Hobig bridge foreclosed access to the Torzy property to

and from the South Chanell, obstructing the Torzys' easement rights in the canal system.  Resp. at 19–20.[4]

None of these allegations indicates that the decision to allow the bridge was "conscience shocking" or irrational beyond debate.  The circumstances involved in the Hobig bridge and the proposed Burnett boathouse are different.  As Gronda's supervisor, Andrew Hartz, explained, they are differently situated canals and different structures.  Hr'g Tr. at 138 ("They're different . . . and the public's expectation of use is different than those canal systems.  Burnett's canal is not a dead-end canal behind someone's home.  It's got a different layout within the waterway.").  Further, the Burnett permit application involves the specific location of the boathouse (with multiple alternative configurations) and not a bridge providing the sole means of vehicular access to an individual's property.  Id.  Accordingly, EGLE staff testified that there were no feasible prudent alternatives for the Hobig bridge project.  Id. at 113.  Gronda stated these same reasons in her affidavit.  Gronda Aff. at ¶ 18.  There is a rational basis for both decisions.

As for the bridge's alleged non-compliance with the after-the-fact permit, Gronda has supplied a detailed rebuttal to the Torzys' list of alleged irregularities.  She has stated that the after-the-fact permit "does not require steel seawall to be installed at the bridge abutments, as shown within the site plans and cross-sectional drawings associated with this permit.  Riprap shoreline protection was authorized."  Id. at ¶ 7.  "During EGLE's complaint inspection completed on June

---

[4] The Torzys suggest that they believe that Gronda's decision was motivated by "some type of social relationship" with Hobig or his daughter, or, alternatively, "frustration with the the Torzys complaints about the unpermitted bridge construction."  Compl. at ¶ 77–78.  They provide no evidence to support either theory, and both theories are discredited by the record.  See Gronda Aff. ¶¶ 12 (Gronda does "not now, nor have ever had any frustrations with Mr. Torzy regarding his complaint to EGLE."), 13 (Gronda does "not now, nor have ever had, a personal relationship with Mr. Hobig or his daughter."  Her only interaction with them was "in a professional capacity" when they "were investigated for a potential wetland violation at a separate location unrelated to this matter.").

9, 2023, the riprap bridge abutments were observed to have 6–10-inch diameter limestone riprap placed at and below the Ordinary High Water Mark." Id. at ¶ 8.  After reviewing the Torzys concerns, "EGLE determined that the bridge met the requirements listed within Part 325 of the NREPA.  There were no signs of erosion at the abutments." Id. at ¶ 9.  Additionally, the ALJ affirmed Gronda's decision.  ALJ Decision at 18.  It found that "the project will not cause significant adverse effects on the environment" and that "[t]here are no adverse effects from the proposed project on riparian interests of adjacent owners." Id.  That decision was adopted by the EGLE Director. Op. of the Dir.  As for the Torzys' expert report, the expert never reviewed the current permit before writing the report.  Indeed, the report was written a month prior to the issuance of the permit.  Hr'g Tr. at 68.

Finally, regarding the Torzys' alleged easement, Gronda stated that the riparian rights associated with Torzy's property "exists along the natural waterway of the South Channel of the St. Clair River, not the man-made canal where the vehicular access bridge exists.  Man-made canals do not possess riparian rights, as defined in part 325." Gronda Aff. ¶ 10.  Thus, she concluded that the issuance of the permit and building of the bridge did not violate any of the Torzys' rights guaranteed by the Constitution and laws. Id.  There is nothing conscience shocking about this.  At most it might have been an erroneous interpretation of part 325, which is not enough to violate substantive due process.  See Golf Vill. North, 45 F.4th at 602 ("At most, it's an erroneous interpretation of the Code. That can't be enough to violate substantive due process.").

Gronda's decision was challenged in the circuit court and in the administrative process.  Neither found any basis to challenge her decision.[5]  Where a state officer's administrative decision

---

[5] The administrative law judge affirmed the issuance of the after-the-fact permit, making the following conclusions of law:

has been challenged in judicial and administrative processes and not found wanting, there is simply no way to characterize the official's decision as arbitrary or conscience shocking.

### 2. Inverse Condemnation/Taking

The Torzys appear to argue that the issuance of the permit effected an inverse condemnation (Count III) amounting to regulatory taking (Count IV) of Plaintiffs' property, asserting that the issuance of the permit and building of the bridge impeded their canal access, causing their property to lose over $200,000 in value. Resp. at 21–23. The Sixth Circuit has "held that individual liability for takings claims is not clearly established" and "granted qualified immunity to an official sued in his individual capacity." O'Connor v. Eubanks, 83 F.4th 1018, 1022 (6th Cir. 2023) (punctuation modified). Thus, Gronda is immune from the Torzys' taking claim.

### B. Other Arguments

---

1. Richard Hobig is the proper applicant for a permit, and the application for a permit was properly processed.
2. The project proposed in the Application is regulated under Part 325, because the activity calls for material to be placed on a bottomland as defined by Mich Admin Code, R 322.1001(1)(e). Mich Admin Code, R 322.1008(1).
3. The proposed private use of the bottomland will not substantially affect the public's use of those lands and waters for hunting, fishing, swimming, pleasure boating, and navigation. MCL 324.32502.
4. The bottomland is impressed with the public trust. MCL 324.32502; Bott v. Nat. Res. Comm'n, 415 Mich 45, 71 (1982).
5. The proposed private use of the bottomland will not substantially affect the public trust. Obrecht v. Nat. Gypsum Co., 361 Mich 399, 413 (1960); Mich Admin Code, R 322.1015.
6. The project will not cause significant adverse effects on the environment. Mich Admin Code, R 322.1015.
7. There are no adverse effects from the proposed project on riparian interests of adjacent owners. Mich Admin Code, R 322.1015.
8. No feasible and prudent alternative to the project exists. Mich Admin Code, R 322.1015.

ALJ Decision at 19 (Dkt 15-1).

Because the Court finds that Gronda is immune from suit, the Court need not reach Gronda's collateral estoppel arguments.  All that remains is the Torzys' state law negligence claim. With the Torzys' federal claim being dismissed, the Court declines to exercise supplemental jurisdiction over their state-law claims.  See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").  The Court dismisses the Torzys' state-law claims without prejudice.

### III.    CONCLUSION

The Court grants Gronda's motion in part (Dkt. 11).   Gronda is awarded summary judgment on all federal claims.  The Torzys' state law claims are dismissed without prejudice.

**SO ORDERED.**

Dated: March 31, 2026                          s/Mark A. Goldsmith
Detroit, Michigan                              MARK A. GOLDSMITH
                                               United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2026.

                                               s/Joseph Heacox
                                               JOSEPH HEACOX
                                               Case Manager